CENTER FOR DISABILITY ACCESS
Mark Potter, Esq., SBN 166317
Michelle Uzeta, Esq., SBN 164402
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
michelleu@potterhandy.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Karma Quick,** | Case No. |
| Plaintiff, | **Complaint For Declaratory and Injunctive Relief and Damages For Violations Of:** |
| v. | |
| **BARBRI, Inc. and Does 1-10 inclusive,** | 1. Title III of the American's With Disabilities Act, 42 U.S.C. §12182 *et seq.*; |
| Defendants. | 2. California's Unruh Civil Rights Act, Cal. Civ. Code 51 *et seq.* and |
| | 3. California's Disabled Persons Act, Cal. Civ. Code § 54.1 *et seq.* |
| | **Jury Trial Demanded** |

Plaintiff Karma Quick complains of Defendants BARBRI, Inc. and Does 1-10, inclusive, and alleges as follows:

## INTRODUCTION

1. The ADA was passed more than two decades ago "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

In enacting the ADA, Congress found that discrimination against persons with disabilities "persists in such critical areas as ... public accommodations, education ... [and] communication ...." 42 U.S.C. § 12101(a)(3).  Congress also found that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, ... failure to make modifications to existing [] practices, ... and relegation to lesser services, programs, activities, [] or other opportunities." 42 U.S.C. § 12101(a)(5).

2.    With this background, Plaintiff Karma Quick ("Plaintiff") brings this action for declaratory and injunctive relief and damages against BARBRI, Inc.  ("BARBRI") and Does 1-10, inclusive (collectively, "Defendants"), for discrimination on the basis of disability, in violation in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12182 *et seq.*, and California civil rights law.

3.    Plaintiff, who is severely hard of hearing, alleges that Defendants have failed and refused, and continue to fail and refuse, to take the steps necessary to ensure that she is not excluded, denied services, segregated or otherwise treated differently than other individuals enrolled in Defendants' Summer 2014 bar review course ("2014 Bar Review") because of the absence of auxiliary aids and services.

4.    As a result of Defendants' acts and omissions, Plaintiff has been denied her right to effective communication, and rendered unable to effectively participate in and/or access the 2014 Bar Review.  Until the Defendants' discriminatory policies are modified, Plaintiff will continue to be unjustly excluded, denied services, segregated or otherwise treated differently than other individuals enrolled in the 2014 Bar Review.

2

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this action and Plaintiff's federal claims pursuant to 42 U.S.C. § 3613 and 28 U.S.C. §§ 1331 and 1343.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all of the acts and omissions giving rise to these claims occurred within the County of San Francisco, State of California.

**PARTIES**

7.      Plaintiff Karma Quick is severely hard of hearing.  Plaintiff is, and at all times relevant herein was, a qualified individual with a "disability" as defined under ADA and its implementing regulations (42 U.S.C. § 12102; 28 C.F.R. § 36.104) and California law (Cal. Gov. Code § 12926).

8.      Defendant BARBRI, Inc., is a company headquartered in Dallas, Texas whose primary product offering is a bar exam preparation course. BARBRI offers law school graduates a six to seven week review course featuring lectures by law professors on the six major areas covered on the Multistate Bar Examination (MBE) – torts, contracts, real property, evidence, criminal law, and constitutional law – along with additional lectures on  law topics relevant to the state in which the participant plans to take the bar.

9.      Plaintiff is currently unaware of the true identities of DOES 1-10, inclusive, and will seek leave to amend when their true names, capacities, connections, and responsibilities are ascertained.

10.      Plaintiff is informed and believes that each of the Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent, subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and was at all times acting and performing, or failing to act or perform, within the

3

course and scope of such similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

## FACTS UPON WHICH ALL CLAIMS ARE BASED

11.     Plaintiff is severely hard of hearing and wears two (2) digital and programmable hearing aids.  Plaintiff has significant difficulty understanding speech without utilizing Communication Accessed Real-time Translation ("CART") services.

12.     CART is Plaintiff's preferred auxiliary aid/service, and the auxiliary aid/service that affords her effective communication in an educational setting.

13.     Defendants have repeatedly failed and refused to provide Plaintiff with effective communication, specifically including, but not limited to CART services, where necessary to ensure that she is not excluded, denied services, segregated or otherwise treated differently than other individuals enrolled in Defendants' Summer 2014 Bar Review.

### A. *Plaintiff's Requests for Accommodation*

14.     Plaintiff took Defendants' live lecture summer bar review course in 2008.  In April 2008, Plaintiff requested, and was provided the following accommodations for that bar review course: CART services, preferential seating, use of an assisted listening device and copies of lectures and pre-filled outlines.

4

15.    Plaintiff's hearing loss is permanent, and has only worsened since April 2008.

16.    On April 29, 2014, Plaintiff requested accommodations from Defendants for the live lecture 2014 Bar Review at St. Mary's Cathedral in San Francisco, including CART services, preferential seating and copies of lectures and pre-filled outlines.

17.    In support of her April 2014 accommodation requests, Plaintiff completed BARBRI's ADA Accommodation Request form, submitted medical support in the form of an April 2013 audiogram, and provided Defendants with a cover letter that both detailed her needs and referenced Defendants' prior provision of the requested accommodations in 2008.

18.    On April 30, 2014, Plaintiff received an email correspondence from Karlyn Ruth Meyer, National ADA Director and Senior Editor for BARBRI.  Ms. Meyer offered to provide Plaintiff with filled in lecture handouts for the 2014 Bar Review, and notified Plaintiff that she would receive transcripts of all lectures "as they are completed."  Plaintiff's other accommodation requests were not addressed at all.

19.    Plaintiff responded to Ms. Meyer later on April 30, 2014, with an email correspondence voicing concerns about Defendants' response to her accommodations requests.  In this correspondence, Plaintiff asked that they reconsider their position on her accommodations.  Plaintiff also directed this correspondence to Sergio Velador, BARBRI's California ADA Coordinator.

20.    In her April 30, 2014 correspondence, Plaintiff explained to Ms. Meyer that:

    a. Without CART services she would be excluded from understanding what takes place during lectures, unlike the hearing BARBRI students who would be able to understand the lectures as they were taking place.

5

   b. CART services does not replicate only what is said in a lecture; it also includes all environmental sounds such as laughing, problems with any sound system, door knocking, and so forth, thereby capturing nuances and placing her on equal footing as BARBRI students without hearing loss.

   c. CART services would allow her to access information in the event of emergency.

   d. CART services would allow her to access "off script" information and permit her to access lectures as they were happening and to follow along at the same rate as other students.

   e. CART services would allow her to participate in interactive portions of the lectures.

21.    In her April 30, 2014 correspondence to Ms. Meyer, Plaintiff objected to the provision of post-lecture transcripts. Plaintiff explained that the transcripts alone would not be effective communication for her, as they would not allow her to follow along and understand the lecture as it was taking place. Plaintiff also explained that relying on transcripts provided after lectures would put her at a disadvantage from other students.  Other students would have the benefit of real-time understanding of lecture content, allowing them to immediately work on assignments.  Plaintiff, on the other hand, would have to wait for transcripts to understand what happened in lectures.

22.    In her April 30, 2014 correspondence to Ms. Meyer, Plaintiff objected to the fact that Defendants did not respond to her request for preferential seating.

23.    In her April 30, 2014 correspondence to Ms. Meyer, Plaintiff accepted Defendants' offer of filled-in lecture outlines.

24.    In her April 30, 2014 correspondence to Ms. Meyer, Plaintiff offered to provide Defendants with contact information for seven (7) CART services providers in the Bay Area to aid them in meeting Plaintiff's needs, including a woman with whom Defendants had contracted to provide Plaintiff with CART services in 2008.

25.    In a second email correspondence to Ms. Meyer on April 30, 2014, Plaintiff forwarded documentation related to BARBRI's April 2008 approval of her request for CART.  This correspondence was also directed to Mr. Velador.

26.    On May 7, 2014, Plaintiff received an email correspondence from Ms. Meyer related to her request for accommodations for the 2014 Bar Review.  Mr. Velador and Alicia Stoner, the Regional Director of Customer Engagement at BARBRI, were included in the email. That correspondence provided:

     a.  That Plaintiff would be provided preferential seating.

     b.  That course administrators would be able to help Plaintiff in the event of emergency.

     c.  Clarification that advance transcripts of lectures would be provided;

     d.  Representation that the "full substance" of the lectures would be captured in the lecture transcripts.

     e.  Assurances that Defendants would contact Plaintiff in the event a transcript was not available prior to a lecture, so that alternative accommodations could be arranged.

     f.  Confirmation that filled-in versions of the lecture handouts would be provided to Plaintiff.

27.    Plaintiff's request for CART services was not addressed by Ms. Meyer in her May 7, 2014 correspondence.

28.    On May 15, 2014, Plaintiff responded to Ms. Meyer's May 7, 2014 correspondence via email, explaining again why transcripts without CART services would not constitute effective communication for her. Plaintiff's correspondence was also directed to Mr. Velador and Ms. Stoner. In her correspondence, Plaintiff again expressed concerns about the timeliness of communication and her ability to follow along with lectures like other students.   Plaintiff also expressed concerns with not being able to access environmental cues and factors without CART services.

29.    In her May 15, 2014 correspondence, Plaintiff also informed Ms. Meyer, Mr. Velador and Ms. Stoner that due to Defendants multiple denials of her CART services request, she would be bringing her own CART provider to the 2014 Bar Review - unless and until Defendants provided her with CART services - to ensure her right to effective communication.

30.    On May 19, 2014, Ms. Meyer responded to Plaintiff's May 15, 2014 correspondence.  Ms. Meyer claimed that there would be no interaction during lectures, and concluded that transcripts would provide effective communication for Plaintiff to follow along with lectures.  Ms. Meyer also confirmed that Plaintiff could provide her own CART provider for the 2014 Bar Review, but added that BARBRI was willing to provide CART services on days for which no transcript would be available in advance of the lecture.

### B. _Defendants' Ongoing Failure to Make Online 2014 Bar Review Content Accessible_

31.    On information and belief, there are portions of the 2014 Bar Review that are on-line only, and accessible only through BARBRI's website. These videos are not captioned.

32.    On May 16, 2014, Plaintiff was sent transcripts of BARBRI's MBE Preview online videos.  Plaintiff did not have equal access to the content

of the videos, as she was unable to follow along the transcript and watch the video at the same time.

33. On May 17, 2014, Plaintiff sent an email to Ms. Meyer and Kate Levine, BARBRI's Assistant ADA Director, advising of the difficulties she was having accessing MBE Preview videos and requested that she be provided captioned versions.

34. In her May 19, 2014 email correspondence to Plaintiff, Ms. Meyer confirmed that BARBRI's closed captioning services were not ready, but would be ready for Plaintiff in Winter 2015 if she wished to take BARBRI's course at that time.

35. Defendants also use online videos to explain essay approaches for the 14 areas of law tested by the State Bar.  These approaches are not taught in the live lecture class. Plaintiff was assigned, and has been (or will be) unable to fully and equally access these online videos on the following dates:

    a. Friday, May 16 - 1 video assigned and inaccessible;

    b. Thursday, May 22 - 2 videos assigned and inaccessible;

    c. Wednesday, May 28 - 2 videos assigned and inaccessible;

    d. Friday, May 30 - 2 videos assigned and inaccessible;

    e. Sunday, June 8 - 1 video assigned and inaccessible;

    f. Monday, June 9 - 1 video assigned and inaccessible;

    g. Wednesday, June 11 - 2 videos assigned and inaccessible;

    h. Monday, June 16 - 1 video assigned and inaccessible;

    i. Tuesday, June 17 - 2 videos assigned and inaccessible;

    j. Sunday, June 22 - 1 video assigned and inaccessible;

    k. Monday, June 23 - 1 video assigned and inaccessible;

    l. Wednesday, June 25 - 2 videos assigned and inaccessible;

    m. Thursday, June 26 - 2 videos assigned and inaccessible;

n.  Friday, June 27 - 1 video assigned and inaccessible;

o.  Tuesday, July 1 - 1 video assigned and inaccessible;

p.  Wednesday, July 2 - 3 videos assigned and inaccessible; and

q.  Thursday, July 3 - 2 videos assigned and inaccessible.

### C. *Plaintiff's Discriminatory and Differential Treatment*

36.    Defendants' failure and refusal to provide Plaintiff with all the accommodations she requested – the same accommodations she had been provided in 2008 –  has resulted in her being excluded, denied services, segregated or otherwise treated differently than other individuals enrolled in Defendants' 2014 Bar Review.  Specific examples of the difficulties faced by Plaintiff follow.

37.    On May 21, 2014, Plaintiff attended the Constitutional Law live lecture.  Plaintiff provided her own CART services.  Plaintiff received the "advance transcript" for the lecture via email at 7:47 a.m. on May 21, 2014. Class started at 9 a.m.  Due to Defendants' lack of timeliness in getting Plaintiff the transcript, she was unable to print a copy to bring to class.  The lecture transcript was difficult for Plaintiff to read or use while concurrently trying to follow along with the lecture, as it was 49 pages long, in 12 point font, and single spaced.

38.    Although Plaintiff had been provided with filled-in lecture notes in advance of the May 21, 2014 lecture, the notes were inadequately filled-in.  Lecturing professor Chemerinksy gave far more information and details in the lecture -- detail that should have been included in the outline. Moreover, the outline contained typographical errors.  Further, Plaintiff was unable to write in the non-writable PDF handout that Defendants provided her, so she had to open the Handout Book from BARBRI and try and write in everything she could. As Plaintiff could not write and watch CART at the

Complaint

same time, she was unable to follow along and benefit from the lecture in the same manner as her hearing peers.

39.    Defendants did not inform Plaintiff that there were writable PDFs available for the Constitutional Law live lecture before sending her non-writable PDFs.

40.    Plaintiff relied on the CART services she had arranged, on her own, to access the May 21, 2014 lecture.  Without these CART services, Plaintiff would not have been able to follow the lecture in real time, to access and benefit from the lecture content in a manner similar to her hearing peers.

41.    On May 22, 2014, Plaintiff attended the Essays live lecture. Again, Plaintiff provided her own CART services.  The lecturing professor, Professor Sakai, held an interactive class, and on at least six (6) occasions went off script, asking questions of the class.  If Plaintiff had not provided her own CART provider that day, she would have been excluded from these portions of the lectures.  Having CART allowed Plaintiff to give an answer to one of the professor's posed questions, and otherwise participate in the lecture.

42.    The May 22, 2014 lecture notes were not timely provided, arriving via DropBox to Plaintiff at 8:50 a.m., after she was already seated for the 9 a.m. lecture.

43.    On May 22, 2014, Plaintiff's CART provider informed Plaintiff that Defendants had contracted with her to provide CART services for Plaintiff the following week – May 27, 2014 through May 30, 2014. Defendants provided CART on these days because they had no transcripts for the live lectures scheduled to occur on those days.

44.    Defendants did not communicate directly with Plaintiff regarding the provision of CART services or the lack of transcripts for the live lectures on May 27, 2014 through May 30, 2014.

Complaint

45.     On May 23, 2014, Plaintiff attended the live Constitutional Law MBE Workshop.  Defendants contracted with Plaintiff's CART provider to provide CART services on this day, without notifying Plaintiff that they planned to do so.  No transcript was provided.

46.     On May 27, 2014, Plaintiff attended the Torts live lecture. Defendants provided Plaintiff with CART services on this day; no transcript was provided.

47.     The May 27, 2014, Torts lecture was designated by Defendants as a "handout required" lecture. There was a delay in getting class handouts for all students from the BARBRI office that day, so Professor Diamond spent some time engaging with students to address the handout issues.   The process delayed the class start time by approximately thirty (30) minutes. Had CART not been provided, Plaintiff would not have had any idea what was going on in the lecture or had any access to what the professor was asking of students during this time.

48.     In addition to not being provided a lecture transcript for the Torts lecture, Plaintiff was not provided with filled in lecture handouts, either.  Once again, Plaintiff had to use the Handout provided to all hearing students and write in everything she could during the lecture. As Plaintiff could not write and watch CART at the same time, she was unable to follow along and benefit from the lecture in the same manner as her hearing peers.

49.     On June 4, 2014, Plaintiff attended the Performance Test Workshop.  The Performance Test Workshop was not a live lecture; students were shown a video from the BARBRI website instead.  Despite having actual knowledge of the inaccessibility of its online content, Defendants did not provide Plaintiff with CART services for this workshop; she provided her own CART provider.  Had Plaintiff not supplied her own CART provider for this lecture she would have been fully excluded from the entirety of the class.

50.     Defendants did not provide Plaintiff with advance transcripts or filled in lecture notes for the June 4, 2014 workshop either.  Plaintiff's CART provider had difficulty transcribing the online video due to the professor's extraordinarily quick rate of speech, so Defendants' failure to provide Plaintiff with the filled in lecture notes was particularly impactful.  Plaintiff was completely unable to follow along with the video lecture at the same rate and with the same result as her hearing peers.

51.     Plaintiff sent an email to Ms. Meyer, Ms. Stoner and Mr. Velador on June 4, 2014, expressing her discontent with the lack of access to the Performance Test Workshop online video.  Ms. Meyer responded to Plaintiff on June 6, 2014, confirming again that captioning of videos was still not available.

52.     On June 5, 2014, Plaintiff attended the Real Property I and II live lectures.  Defendants did not provide Plaintiff with CART services for this workshop.  Plaintiff provider her own CART provider.  Despite earlier assurances from Ms. Meyer that the live lectures never went "off script", Professor Maynard did indeed go off script during this lecture.  Had Plaintiff not supplied her own CART, she would have been excluded from these moments; moments to which her hearing peers had full access.

53.     On June 9, 2014, Plaintiff attended the Contracts live lecture.  The filled in notes provided to Plaintiff by Defendants were insufficient, in that they were missing key information discussed in the lecture that Plaintiff only became aware of because she brought her own CART provider.

54.     Also on July 9, 2014, Plaintiff and her CART provider were treated in an inappropriate and disability insensitive manner by lecturing professor Epstien. Before Professor Epstein's session had started, Plaintiff's CART provider went up to Professor Epstein to introduce herself.  She let him know that she would be providing captioning services for Plaintiff.   She

pointed to her steno machine and explained that she would be taking down everything said during the lecture.  She then explained that if she had a problem keeping up because he was talking too fast, she would raise her hand as an indication to him to slow down. Professor Epstein responded in a rude tone with "We'll see."   Shortly thereafter, Professor Epstein approached Plaintiff's CART provider and stated that since the lecture was on video, she and Plaintiff could "just look at the video." The CART provider felt Professor Epstein was being very rude and condescending in his tone.

55.   Later in Professor Epstein's lecture he started to read a hypothetical and looked over at the CART provider and said, "you don't need to take this down since I'm reading it." At another point in the lecture, Professor Epstein used the word "fuck", pointed at Plaintiff's CART provider and stated "yes that was the F-word, be sure you get that in there."

56.   On June 19, 2014, Plaintiff attended the first day of a two-day Civil Procedure live lecture.  Defendant did not provide a CART provider. Plaintiff provided her own CART provider.  Defendants sent Plaintiff the wrong outline for this lecture.

57.   As a result of Defendants acts and omissions, Plaintiff has been, and continues to be, excluded, denied services, segregated or otherwise treated differently than other individuals enrolled in Defendants' 2014 Bar Review because of the absence of auxiliary aids and services.  As the communication access barriers and discriminatory policies and practices herein alleged are ongoing, they constitute a continuing violation of Plaintiff's rights, for which Defendants are liable.

58.   Until the communication barriers facing Plaintiff are removed and/or remedied and Defendants' discriminatory policies modified, Plaintiff will continue to be prevented and deterred from participating in the 2014 Bar Review solely by reason of her disability, and to her detriment.

59.    Plaintiff has been, and will continue to be injured by Defendants' acts and omissions, and will continue to experience loss of opportunity, out-of-pocket expenses, difficulty, frustration, embarrassment, humiliation and a loss of civil rights.

60.    Unless enjoined, Defendants will continue to engage in the unlawful acts and pattern and practice of discrimination described above. Plaintiff has no adequate remedy at law. Accordingly, Plaintiff is entitled to injunctive relief.

61.    An actual controversy has arisen and now exists between the parties concerning their respective rights, duties and obligations under Federal and State law.  Accordingly, Plaintiff is entitled to declaratory relief.

**CLAIMS FOR RELIEF**

**First Cause of Action**

**Title III of the Americans with Disabilities Act**

**42 U.S.C. § 12182 *et seq.***

62.    Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

63.    Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

64.    Bar review programs, including BARBRI, are "public accommodations" for purposes of Title III.  42 U.S.C. 12181(7)(J).

15

65.    Defendants have discriminated against Plaintiff on the basis of her disability in violation of Title III of the ADA.  Defendants' discriminatory conduct includes, but is not limited to:

    a.  Directly, or through contractual, licensing, or other arrangements, excluding or denying Plaintiff goods, services, facilities, privileges, advantages, accommodations, and/or opportunities, on the basis of her disability. 42 U.S.C. § 12182(b)(1)(A)(i);

    b.  Providing Plaintiff goods, services, facilities, privileges, advantages, and/or accommodations that are not equal to those afforded non-disabled individuals. 42 U.S.C. § 12182(b)(1)(A)(ii);

    c.  Failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless they can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. § 12182(b)(2)(A)(ii);

    d.  Failing to take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services. 28 C.F.R. § 36.303(a); and

    e.  Failing to furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. 28 C.F.R. § 36.303(b).

Complaint

66.     Defendants' duties under the ADA are mandatory and long-established. Defendants are deemed to have had knowledge of their duties at all times relevant herein; their failure to carry out said duties was willful and knowing and/or the product of deliberate indifference.

67.     Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. § 12188 and 42 U.S.C. § 12205, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
### Unruh Civil Rights Act
### California Civil Code § 51 *et seq.*

68.     Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

69.     Defendants own and operate a business establishment and, as such, must comply with the provisions of the Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq.

70.     The Unruh Act guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California.  Cal. Civ. Code § 51(b).

71.     The Unruh Act also provides that a violation of the ADA is a violation of the Unruh Act.  Cal. Civ. Code § 51(f).

72.     Defendants have violated the Unruh Act by, inter alia, denying, or aiding or inciting the denial of, Plaintiff's rights to full and equal use of their bar review accommodations, advantages, facilities, privileges, or services.

73.     Defendants have also violated the Unruh Act by denying, or aiding or inciting the denial of, Plaintiff's rights to equal access arising from the provisions of the ADA.

74.     Defendants' duties under the Unruh Act are mandatory and long-established. Defendants are deemed to have had knowledge of their duties at all times relevant herein; their failure to carry out said duties was willful and knowing and/or the product of deliberate indifference.

75.     Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 52, Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION
### California Disabled Persons Act
### California Civil Code § 54.1 *et seq.*
### *(Statutory damages and attorneys' fees only)*

76.     Plaintiff re-pleads and incorporates by reference the allegations contained in each of the foregoing paragraphs, and incorporates them herein as if separately re-pled.

77.     The Disabled Persons Act ("CDPA") provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, ... and privileges of all ... private schools, ... places of public accommodation, ... and other places to which the general public is invited...." Cal. Civ. Code § 54.1(a).

78.     Defendants' acts and omissions, described herein, violate the rights of Plaintiff under the CDPA.

79.     A violation of the ADA is also a violation of the CDPA. See Cal. Civ. Code, § 54.1(d).

Complaint

80.     Defendants' duties under the CDPA are mandatory and long-established. Defendants are deemed to have had knowledge of their duties at all times relevant herein; their failure to carry out said duties was willful and knowing and/or the product of deliberate indifference.

81.     Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 54.3(a), Plaintiff prays for statutory damages and attorneys' fees under Cal. Civ. Code § 54.3(a).

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays the court grant the following relief:

1. A declaration that Defendants' policies and practices discriminate against Plaintiff in violation of the ADA and California civil rights law;

2. An order: (A) requiring Defendants to modify their policies to ensure the provision of effective communication to Plaintiff; and (B) requiring Defendants to train their personnel as to their obligation to provide effective communication to persons who are deaf or hard of hearing.

3. An order awarding Plaintiff damages in an amount within the jurisdiction of this court;

4. An order awarding Plaintiff her attorneys' fees, litigation expenses and costs of suit, as provided by law; and

5. An order awarding such other and further relief as the Court may deem just and proper.

Dated:  June 25, 2014                    CENTER FOR DISABILITY ACCESS

                                         By: *Michelle Uzeta*
                                         Michelle Uzeta
                                         Attorneys for Plaintiff

Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury as to all issues.

Dated:  June 25, 2014

CENTER FOR DISABILITY ACCESS

By: *Michelle Uzeta*
Michelle Uzeta
Attorneys for Plaintiff

Complaint